FILED

AUG 27 2021

CLERK U S DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY
                    DEPUTY CLERK

## NITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS

Andy Hope Williams Jr., Amy Cage, *Sui Juris* )
*In Propria Persona*                        )
               Plaintiff        )
            v.                            )
                                         )
Eddie Lange in his official capacity as Bell County )
Sheriff, Keyon Mckinney in his official capacity as )
administrator of the Bell County Juvenile Detention )
Center; Mr. Montgomery in his official capacity as )
a Guard of the Bell County Juvenile Detention      )
Center; Mr. Jose Garcia Rubio in his official      )
capacity as a Guard of the Bell County Juvenile    )
Detention  Center; Mr. Moore in his official       )
capacity as Assistant Director of the Bell County  )
Juvenile Detention Center; Mr. Clean in his official )
capacity as a Supervisor of the Bell County Juvenile )
Detention Center; Ms. Heal in her official         )
capacity as a Guard of the Bell County Juvenile    )
Detention Center; Ms. Little in her official       )
capacity as a Guard of the Bell County Juvenile    )
Detention Center; Mr. Shepherd in his official     )
capacity as a Guard of the Bell County Juvenile    )
Detention Center; Ms. Blackwood in his official    )
capacity as a Guard of the Bell County Juvenile    )
Detention Center;                                  )
              Defendants.          )

6:21 C V 895

## COMPLAINT FOR DECLARATORY JUDGMENT & INJUNCTIVE RELIEF

    1.    Plaintiffs Andy Hope Williams Jr., and Amy Cage as Private Attorney Generals

files this complaint against the above named Defendants who are employed at the Bell County

Juvenile Detention Center (collectively "BCJDC Defendants"), and alleges as follows:

    2.    A private attorney general is meant to convey the concept that a private citizen

may stand in the shoes of the Attorney General advancing the public interest in a lawsuit on

behalf of a significant class of persons.

**NATURE OF THE ACTION**

3.       This is a civil rights action brought by Plaintiff's to address the dangerous, inhumane, and unconstitutional conditions, policies, and practices that exist and have existed against the children detained at the Bell County Juvenile Detention Center (the "BCJDC"). These Children are held prior to being convicted of any crime and are treated as if they are guilty and property of BCJDC. Rather than being cared for, respected, and rehabilitated, they are locked in hot, unsafe, and unsanitary cells, denied sufficient (or, in some cases, any) education, denied sufficient (or, in some cases, any) recreational activities, denied sufficient (or, in some cases, any) medical attention and medication, denied sufficient mental health care and support, and placed in mechanical restraints for extended periods of time. In some cases, the BCJDC Staff and Guards punish the Children by using cruel methods such as shackling a Child to a "restraint chair" for hours at a time (sometimes overnight and for more than 24 hours) without adequate monitoring. Staff provoke the children with verbal and mental abuse, taunts them by calling them names, writes them up, and then physically attack the Children with brute force when they respond to the physical, verbal, and mental abuse. Staff and Guards hit, kick, punch, put Children in choke holds, head locks, slam them into walls causing bloody noses, kick them while they are on the floor in what Defendants deem as a method to establish order. In some instances there are six to fourteen guards and staff on one child with their knees on the back of their necks while other guards sit on the Childs face making it difficult for the Child to breath. Guards are telling Children to kill themselves and taunting them with sexual comments about their loved ones. Children are placed in solitary confinement for months at a time. Forcing Children—especially Children with mental or physical disabilities—to live in these medieval conditions is unconscionable and inexcusable, especially in the United States in the 21st century. These

2

practices not only fail to achieve the goal of rehabilitation, but they sabotage it, causing irreparable damage not only to the most fragile members of our society at the most vulnerable times in their lives, but to society itself because of the heightened risk that these Children will become permanently trapped in a cycle of crime. This must stop.

4.     The systemic deficiencies at the BCJDC exist because generally accepted juvenile justice standards are not being followed. Children are not given rule books and threatened with additional charges if they attempt to report staff abuse. The widespread and significant deficiencies at the BCJDC violate the Fourteenth Amendment's mandate that youth in pretrial custody be protected from harm and not be subjected to punishment.

5.     Plaintiff's brings this action to redress violations by the Defendants, acting under color of state law, of the civil and constitutional rights of the Children. Defendants are deliberately indifferent to the substantial risks of harm these children face at BCJDC, and Defendants' conditions, policies, and practices at BCJDC constitute punishment and a substantial departure from accepted professional judgment, practices, and standards. The conditions at the BCJDC, and the policies and practices of Defendants, endanger the Children's physical health and safety, threaten the Children's emotional and psychological well-being, deprive the Children of adequate programming and education, and deprive the Children of due process of law.

6.     Complaints raised by parents about the neglectful and abusive treatment of their children have been ignored for years. Complaints by local attorneys with the Bell County Public Defender's Office have also failed to convince the BCJDC Defendants to remedy these egregious constitutional violations.

7.     Plaintiff's, on behalf of the Children seek declaratory and injunctive relief against Defendants on the grounds that Defendants have deprived the Children of the rights secured to

them by the Eighth and Fourteenth Amendments of the United States Constitution, as enforced by 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182 et. seq., the Rehabilitation Act, 29 U.S.C. §§ 794 et seq., the Individuals with Disabilities Education Act ("IDEA"), Title 20, United States Code §§ 1401 et seq., and relevant provisions of federal and state law.

8.        The allegations in this Complaint regarding the conditions of confinement at the BCJDC facility and Defendants' policies, practices, acts, and omissions are based on, among other things, interviews with at least five (5) Children or parents of Children who have been and/or are detained at the BCJDC.

## JURISDICTION & VENUE

9.        This Court has jurisdiction over this action under 28 U.S.C. § 1343(a)(3), this being an action to redress the deprivation of rights under color of state law secured by the Constitution.

10.       This Court also has jurisdiction over this action under 28 U.S.C. § 1343(a)(4), this being an action to secure declaratory and injunctive relief under Acts of Congress providing for the protection of civil rights, specifically the Civil Rights Act and 28 U.S.C. § 1331, this being an action in which the matter in controversy arises under the Constitution and laws of the United States.

11.       This Court is authorized to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202 and Rules 57 and 65 of the Federal Rules of Civil Procedure. 11. This District is an appropriate venue for this action pursuant to 28 U.S.C. § 1391(b) as the acts and events giving rise to the claims herein occurred within the Western Division of Texas.

## PARTIES

12.     Andy Hope Williams Jr., has standing to bring this complaint as a "private attorney general" which authorizes a private citizen standing to sue for vindication of a public objective. *Associated Industries v. Ickes*, 134 F.2d 694 (2d Cir. 1943)

13.     Amy Cage has standing to bring this complaint as a "private attorney general" which authorizes a private citizen standing to sue for vindication of a public objective. *Associated Industries v. Ickes*, 134 F.2d 694 (2d Cir. 1943)

14.     Eddy Lange is named as a defendant in his official capacity as Sheriff of Bell County. Sheriff Lange's office is responsible for the operation, staffing, and oversight of the BCJDC.

15.     Keyon McKinney is named as a defendant in his official capacity as the facility administrator of the BCJDC and the Bell County Juvenile Services Center. Defendant McKinney is charged with the overall responsibility for the operations and safety of the Children there.

16.      Mr. Montgomery is named as a defendant in his official capacity as a Guard at the BCJDC. Mr. Montgomery is responsible for the well being of the Children at the BCJDC.

17.     Mr. Jose Garcia Rubio is named as a defendant in his official capacity as a Guard at the BCJDC. Mr. Garcia is responsible for the well being of the Children at the BCJDC.

18.     Mr. Moore is named as a defendant in his official capacity as Assistant Director at the BCJDC. Mr. Moore is responsible for the well being of the Children at the BCJDC.

19.     Mr. Clean is named as a defendant in his official capacity as a Supervisor at the BCJDC. Mr. Clean is responsible for the well being of the Children at the BCJDC.

20.     Mr. Shepherd is named as a defendant in his official capacity as a Guard at the BCJDC. Mr. Shepherd is responsible for the well being of the Children at the BCJDC.

5

21.     Mr. Blackwood is named as a defendant in his official capacity as a Guard at the BCJDC. Mr. Blackwood is responsible for the well being of the Children at the BCJDC.

22.     Ms. Heal is named as a defendant in her official capacity as a Guard at the BCJDC. Ms. Heal is responsible for the well being of the Children at the BCJDC.

23.     Ms. Little is named as a defendant in her official capacity as a Guard at the BCJDC. Ms. Little  is responsible for the well being of the Children at the BCJDC.

24.     The Bell County Sheriff's Department is a public entities as defined under Title II of the ADA, 42 U.S.C. § 12131(1)(B).

## FACTUAL ALLEGATIONS

25.     The BCJDC is located in a building more than 50 years old and situated at the end of a lightly traveled street in North Bell. The facility is outside of the public eye and, according to the Bell County website, has 26 beds. Children detained at the BCJDC range in age from 11 to 16.

26.     Numerous conditions and practices at the BCJDC violate the Children's constitutional and statutory rights. These conditions and practices include, but are not limited to, the following:

**Unsanitary and Unsafe Conditions**

27.     The BCJDC Defendants fail to maintain the BCJDC in a sanitary and safe condition. The facility and cells have visible dirt.

28.     The BCJDC Defendants have inadequate capacity to respond to emergencies such as behavioral disturbances, fires, or other situations requiring evacuation. Fights and/or attacks sometimes take place in cells without guards making any effort to halt the violence and to restore order.

6

29.     The BCJDC Defendants require Children to sleep in small, locked, and bare cells, with a metal or concrete bed covered with a thin mattress. When the BCJDC becomes overcrowded, Children are forced to sleep on the floor on thin mats

30.     The cells are not adequately heated and cooled.

31.     The BCJDC Defendants' failure to provide sanitary and safe conditions at the BCJDC violates the constitutional rights of the Children and causes them harm.

**Arbitrary and Excessive Use of Solitary Confinement**

32.     In addition, to mete out punishment for various offenses, the BCJDC Defendants frequently place Children on "mechanical restraint chairs" in their cells. In some instances, the children are left in handcuffs and/or the mechanical restraint chairs for long hours, sometimes lasting overnight. Lockdowns have been ordered for offenses such as laughing, cursing, spitting, or talking loud.

33.     Children are placed in lockdown as punishment without any due process.

34.     Under their existing policies and practices, BCJDC Defendants regularly place Children on lockdown for the convenience of staff or, in some instances, instead of providing therapeutic programming.

35.      BCJDC Defendants do not have a procedure by which qualified professionals determine whether and to what extent isolation is appropriate.

36.     The Children have no understanding of any consistent or rational application of lockdowns for particular offenses, but they understand that a lockdown is imposed as a punishment, not merely as a cool down measure used to de-escalate or to protect the Children from themselves or others.

37.     The BCJDC Defendants' practices with respect to solitary confinement—both as a

default means of housing and also through use of lockdowns as punishment—are

unconstitutional and grossly inconsistent with accepted practices and federal and state law.

Removing Children from their regular routines, school, mental health treatment, and

opportunities for interaction with peers can result in long-term lack of trust, hypervigilance, and

paranoia.

38.     A number of national organizations have concluded that solitary confinement

should never be used for minors. For example, standards published by the National Commission

on Correctional Health Care ("NCCHC") require that youth "should be excluded from solitary

confinement of any duration." The American Medical Association and the American Academy

of Child & Adolescent Psychiatry ("AACAP") similarly oppose the use of solitary confinement

for children and adolescents. The Juvenile Detention Alternatives Initiative ("JDAI") has

published comprehensive standards that prohibit the use of solitary confinement as a disciplinary

measure or for any reason other than as a temporary response to behavior that threatens

immediate harm to a youth or to others. These standards state that facilities should not use room

confinement as a substitute for special individualized programming, including educational

services and treatment plans developed with mental health staff and the youth's family members.

If a young person is placed in isolation, JDAI standards require that the isolation last no longer

than four hours and that staff develop individualized programming for the youth or consult with

a qualified mental health professional about whether a youth's behavior requires that he or she be

transported to a mental health facility. The NCCHC has recognized that children are different

from adults, making their time spent in isolation even more difficult and the developmental,

psychological, and physical damage more comprehensive and lasting. Children experience time

8

differently—a day for a child feels longer than a day to an adult—and have a greater need for

social stimulation. AACAP has similarly concluded that, due to their developmental

vulnerability, adolescents are at particular danger of adverse reactions, including depression,

anxiety, and psychosis, when exposed to prolonged isolation and solitary confinement.

Unfortunately, many of the Children detained at the BCJDC already suffer from depression,

post-traumatic stress, anxiety, and psychosis. Placing these Children in solitary confinement,

especially for extended periods of time, exacerbates these Children's problems and causes

irreparable harm.

     39.     Solitary confinement is antithetical to the goal of maintaining safety and security

in juvenile detention facilities. When a child is experiencing anger as a symptom of mental

illness, use of solitary confinement often results in additional anger, and then additional time in

solitary confinement. According to the CJCA, academic research continues to show that placing

incarcerated youths in solitary confinement has negative public safety consequences, does not

reduce violence, and likely increases recidivism. Further, there is no research showing the

benefits of using solitary confinement to manage youth behavior. By contrast, facilities that have

reduced or eliminated the use of solitary confinement have seen a reduction in violence and

infractions. These facilities have ensured that separation occurs only after multiple attempts to

defuse tensions, and not as an alternative to controlling the manifestations of mental illness. 39.

The harms from the improper and excessive use of solitary confinement are increasingly

recognized around the nation. Federal courts in four states have ordered facilities to cease

improper solitary confinement. Seven states have enacted laws in the past three years limiting the

use of solitary confinement in juvenile facilities, and several other states are considering similar

legislation. In December 2018, Congress passed bipartisan legislation to limit solitary

confinement of youth in federal facilities in the First Step Act. The First Step Act allows only brief isolation when there is an immediate risk of physical harm and never as a punishment.

40.     Some Children at the BCJDC with mental illness have a difficult time complying with the BCJDC's disciplinary rules because of their illness. As a result, Children are often placed in solitary confinement as a result of their illnesses. Placing Children with mental illness in solitary confinement—especially when doing so for extended periods of time—exacerbates the suffering and difficulties associated with the mental illness.

41.     BCJDC Defendants' failure to provide sufficient mental health services to the Children also results in symptomatic behavior giving rise to punishment, instead of the treatment that is needed. These punishments result in long-lasting and substantial harm to all Children and are particularly harmful to Children already suffering from significant mental illness.

42.     To the extent solitary confinement is used, the Child in solitary confinement should receive constant supervision from qualified mental health clinicians. At the BCJDC, however, children placed in solitary confinement are not under constant supervision and often do not have frequent contact with mental health clinicians. This practice creates a dangerous situation for the Children.

43.     BCJDC Defendants also fail to provide Children placed in solitary confinement with adequate education, counseling, recreation, or other rehabilitative treatment.

44.     Guards administering lockdowns lack proper training and qualifications to administer this punishment within appropriate limits to ensure the health and safety of the Children.

45.     Children held in solitary confinement often experience extreme loneliness, anxiety, rage, suicidal thoughts, and depression, among other potentially debilitating emotional

and psychological problems. BCJDC Defendants fail to ensure that prolonged use of solitary confinement does not have adverse psychological consequences on isolated Children.

46.     The use of solitary confinement at the BCJDC violates the constitutional rights of the Children housed there.

**Use of excessive force, and the "mechanical restraint chair,"**

47.     Experts recognize that physical and mechanical restraints of children, as with improper seclusion, can cause physical, psychological, and emotional damage.

48.     Physical force or mechanical restraints should be used on children only if less restrictive alternatives would be ineffective and, even then, only to the degree and duration necessary to bring the situation under control. Moreover, any application of physical force or mechanical restraints should be fully documented.

49.     BCJDC Defendants rely on the use of excessive force such as choking, hitting, kicking, mechanical restraint chair as disciplinary measures for arbitrary and inconsistent reasons that vary based upon what guards are on duty. BCJDC Defendants' arbitrary practices lead to excessive punishment for the Children. These practices are especially detrimental for Children with mental health problems, such as PTSD, anxiety, or depression.

50.     Placing a Child suffering from mental illness in a mechanical restraint chair would almost certainly exacerbate the Child's mental illness, and placing a Child who did not previously suffer from mental illness in the mechanical restraint chair or using excessive force could cause the Child to begin suffering from mental trauma.

51.     Children exposed to the use of excessive force and the mechanical restraint chair are not afforded due process and are placed at substantial risk of harm. The use of these forms of force exceed appropriate limits, is not the least harmful alternative, and serves no justifying

11

governmental purpose.

52.     The Defendants use of the restraint chair and excessive force reveal the staff and guards  lack proper training and qualifications to administer such punishment and do not administer such punishment within appropriate limits to ensure the health and safety of the Children.

53.     The use of excessive force violates the constitutional rights of the Children.

**Overcrowding and Failure to Provide Beds to Children**

54.     The BCJDC facility is frequently overcrowded, resulting in Children being forced to sleep on the floor of the facility. While the BCJDC has a capacity of 36, the facility is overcrowded. The total number of Children housed in the facility on an annual basis has increased in each fiscal year since 2017/18, and no steps have been taken to ease the overcrowding on a permanent basis.

55.     Forcing more than two Children to live and sleep in the small cells of the BCJDC is dangerous, unhealthy, and violate of the Children's constitutional rights.

**Failure to provide programming**

56.     BCJDC Defendants fail to provide the Children with adequate programming. Children at the BCJDC have a constitutional right to adequate treatment, including, among other things, fresh air and outdoor access, adequate behavior management, and recreation programs. Generally accepted professional standards require that juvenile justice facilities provide not only education, but also recreation and meaningful activities such as group and individual therapy, social skills training, and other programming. Further, Texas law provides that, at juvenile detention facilities, "[s]chedules must be developed which include designated times for sleeping, dining, education, counseling, recreation, visitation, and personal time," and "[d]aily schedules

should minimize idleness and promote constructive use of the juvenile's day." BCJDC Defendants are flagrantly breaking this law every day.

57.     BCJDC Defendants fail to provide any regular structured indoor or outdoor recreation. BCJDC Defendants also fail to provide access to regular large muscle exercise activities. As a result of these practices, the Children suffer from extended periods of forced idleness.

58.     Not allowing Children access to sufficient recreation—particularly in conditions such as those that exist at the BCJDC—causes the Children to suffer physical, psychological, mental, and emotional injuries.

59.     The problems created by the inadequate programming and outdoor access at the BCJDC are exacerbated by the lack of an adequate behavior management program at the BCJDC. BCJDC Defendants' failure to provide outdoor access, adequate programming or behavior management is not only violate of the Children's rights, but predictably results in behavior problems.

**Failure to provide separation of individuals with violent propensities**

60.     Children have a right to be free from unreasonable threats to their physical safety. To ensure Children housed at the BCJDC are safe, the facility must have a system for screening and separating aggressive juveniles from more passive ones and for determining appropriate levels of institutional classification.

61.     BCJDC Defendants fail to provide such a system for screening and separating aggressive from passive Children. The problems of overcrowding, understaffing, and poor training compound the danger posed to weaker and younger Children by older, stronger, and more aggressive Children.

13

62.     As a result of failing to separate the Children properly, younger, smaller and more vulnerable children have been beaten up by larger and more aggressive Children. Guards do not always respond to such attacks in a timely manner, even when other Children make loud noise by shouting for help and banging on walls and doors.

63.     The lack of a system of separation poses a serious risk of injury to Children, and BCJDC Defendants are deliberately indifferent to these risks.

**Failure to Provide Adequate Health Care**

64.     BCJDC Defendants are aware that many children incarcerated at the facility have specific medical needs, including physical ailments such as asthma, chronic bronchitis, sleep disorders, and diabetes. BCJDC Defendants are deliberately indifferent to the health needs of the Children. BCJDC Defendants do not provide regular and appropriate medical assessments to the Children upon admittance, and BCJDC Defendants fail to provide timely access to qualified health professionals when the Children are in need of health services. Further, when Children do receive healthcare services, the services are inadequate.

65.     BCJDC Defendants frequently fail to provide the Children with their prescribed medications at the proper dosages at proper intervals or, in many if not most cases, fail to provide the Children with their prescribed medications at all. Often BCJDC Defendants refuse to accept medicines provided by parents of the Children, or they will accept the medicines and return them unused at the end of the incarceration period.

66.     BCJDC Defendants fail to provide a continuity of medical care and adequate documentation for the care that is provided.

67.     In at least one instance the BCJDC Defendants' neglect of a child's need for regular medication for severe asthma resulted in worsening of the Child's condition and the need

for her to be transported to the hospital in an ambulance.

68.     As a result of BCJDC Defendants' deliberate indifference, the Children with

health care needs do not receive adequate treatment and suffer physical and emotional harm in

violation of their constitutional rights.

**Failure to Provide Adequate Mental Health Care**

69.     BCJDC Defendants are fully aware that many, if not most, Children detained at

the BCJDC suffer from various forms of mental illness, and many are prescribed psychotropic

medications. BCJDC Defendants nonetheless are deliberately indifferent to the serious mental

health needs of these Children. BCJDC Defendants very often fail to provide Children with their

prescribed medications, including psychotropic medications, and fail to provide any regular

individualized psychiatric assessment, treatment, counseling, or psychotherapy to the Children in

need of such services.

70.     BCJDC Defendants also fail to do the following:

> (a) Properly screen the Children for medical conditions, including mental
> health conditions, upon their arrival at the BCJDC.
>
> (b) Employ a sufficient number of qualified mental health professionals to
> counsel and treat the Children with mental health treatment needs.
>
> (c) Adequately train and supervise staff to respond in appropriate ways to
> the Children with mental health issues.
>
> (d) Provide a continuum of mental health services to meet the needs of the
> Children.
>
> (e) Maintain adequate mental health records for the Children.
>
> (f) Provide adequate or effective group counseling by trained staff.

(g) Provide adequately for Children who are suicidal or in emotional crisis.

(h) Coordinate follow-up care with community-based mental health and medical providers for Children upon their release from the BCJDC.

71.     As a result of these failures, the Children do not receive counseling or other necessary mental health treatment, and their mental condition deteriorates. 80. As a result of BCJDC Defendants' deliberate indifference to the serious mental health needs of the Children, the Children with mental health needs do not receive adequate treatment and suffer harm in violation of their constitutional rights.

**Failure to Adequately Train and Supervise Staff**

72.     BCJDC Defendants have failed to adequately train and supervise staff at the BCJDC for the usual and recurring situations that they face, and the Children are injured as a direct consequence. The need for more and better staff training is so obvious that BCJDC Defendants' failure to provide such training amounts to deliberate indifference.

**Failure to Provide Adequate Grievance System**

73.     BCJDC Defendants have failed to provide meaningful access to and maintenance of an adequate grievance system. The grievance policies are not clear, and BCJDC Defendants do not timely, if at all, respond to grievances. Investigations of grievances are inadequate, and when responses are provided, they rarely are adequately resolved.

74.     The Children, by virtue of their age, lack of maturity, and education levels, are often unfamiliar with their legal rights and remedies, and they fear retribution for complaining about conditions. In addition, they are often unaware of how to obtain access to the courts or to challenge the legality of their commitments, their continued confinement, and institutional

practices and conditions that may violate their civil rights.

**Lack of Due Process for Alleged Disciplinary Violations**

75.     BCJDC Defendants are required to provide the Children with procedural due

process if they are charged with a disciplinary violation while detained. However, the absence of

an established disciplinary system, including adequate behavior management programming,

results in an informal system of control based on the unfettered discretion of individual detention

officers. This practice is unconstitutional.

**Interfere with Children's Mail**

76.     BCJDC Defendants interfere with the Children's rights to receive mail. Several

times without reason or justification, Defendants reject mail sent to the Children. Sometimes

they return to sender, other times they do not. Plaintiff's do not know if they keep it or throw it

away.

**Necessity for Injunctive Relief; No Adequate Remedy at Law**

77.     BCJDC Defendants have acted and continue to act in violation of the law as

described herein. As a proximate result of the policies, practices, acts, and omissions of BCJDC

Defendants, the Children have suffered and continue to suffer serious and irreparable physical,

psychological, mental, and emotional injuries. The Children detained at the BCJDC, have no

plain, adequate, or complete remedy at law to redress the wrongs described herein. Unless the

Court provides the relief requested by Plaintiff's, the Children will continue to suffer irreparable

injuries from the conditions of confinement at the BCJDC facility and Defendants' policies,

practices, acts, and omissions.

**Knowledge of the Defendants**

78.     BCJDC Defendants have acted, and continue to act, under the color of state law

with respect to all matters alleged herein. All of the conditions, policies, and practices described herein are the result of, and pursuant to, specific decisions, official policies, or customs of the Defendants. Defendants have actual or constructive knowledge, or should have such knowledge, of the conditions, policies, and practices complained of herein.

## FIRST CAUSE OF ACTION
(Declaratory Judgment: Substantive Due Process Under the Fourteenth Amendment to the U.S. Constitution Asserted Against All Defendants)

79.     The preceding paragraphs are incorporated herein as if re-stated verbatim.

80.     When the Defendants take a Child into custody, they assume a duty under the Fourteenth Amendment to protect the Child from harm and substantial risks of serious harm.

81.     Children held at the BCJDC have substantive due process rights that include, but are not limited to: the right to be free from any punishment while they are detained pending trial; the right to be free from and protected from physical, psychological, and emotional harm; the right to necessary treatment, care, and services; the right not to deteriorate physically, psychologically, or emotionally while in state custody; and the right to be free from substantial risks of the above-mentioned harms.

82.     The conditions of confinement at the BCJDC facility and Defendants' policies, practices, acts, and omissions complained of herein constitute the impermissible punishment of pretrial detainees.

83.     Defendants know of a substantial risk of serious harm that these Children will suffer as a result of these practices and policies. Defendants' actions and inaction shock the conscience and are in deliberate indifference to serious, known health and safety needs of the Children, and create substantial risks of serious harms in violation of the Children's rights under the Fourteenth Amendment.

18

84.     The conditions of confinement at the BCJDC facility and Defendants' policies, practices, acts, and omissions complained of herein have also resulted in the imposition of disciplinary punishment and other restrictions on Children at BCJDC without notice, opportunity to contest or appeal the restrictions, or other constitutionally adequate procedural due process as guaranteed by the Fourteenth Amendment to the United States Constitution, and related sections of the Texas Constitution.                                                                          85.

The conditions of confinement at the BCJDC facility and Defendants' policies, practices, acts, and omissions complained of herein have deprived the Children at BCJDC of their constitutionally protected property interest in receiving the minimum education required under federal and state statutes and regulations as guaranteed by the Fourteenth Amendment to the United States Constitution and related sections of the Texas Constitution.                    86.

Consequently, Plaintiff's are entitled to a declaratory judgment from this Court declaring that Defendants have violated the constitutional rights of the Children at BCJDC as guaranteed by the Fourteenth Amendment to the United States Constitution.

## SECOND CAUSE OF ACTION
(Declaratory Judgment: Eighth and Fourteenth Amendments as to BCJDC Defendants)

87.     The preceding paragraphs are incorporated herein as if re-stated verbatim.

88.     The Eighth Amendment prohibits the imposition of cruel and unusual punishment on convicted and incarcerated juveniles, including by exercising deliberate indifference to substantial risks of serious harm, inhumane conditions, and inadequate medical and mental health care.

89.     The above-described conditions of confinement at the BCJDC facility and Defendants' policies, practices, acts, and omissions have inflicted, and continue to inflict, grave

and inhumane deprivations, injuries, and risks to the Children at BCJDC, all of which violate contemporary standards of decency and are intolerable in today's society.

90.     The risks of harm to the Children at BCJDC as a result of the above-described conditions of confinement at the BCJDC facility and Defendants' policies, practices, acts, and omissions are obvious and known to Defendants.

91.     Moreover, the BCJDC Defendants were notified of these risks by others and, thus, actually knew of the risks of harm to the Children as a result of the above-described conditions of confinement at the BCJDC facility and Defendants' policies, practices, acts, and omissions.

92.     Despite actual knowledge of the obvious risks of harm to the Children at BCJDC, Defendants have disregarded these excessive risks to the health and safety of the Children and have failed to rectify the conditions of confinement at the BCJDC facility or to make preventative changes to their policies and practices.

93.     As a result, Defendants' have acted with deliberate indifference to the excessive risk of harm to the Children as a result of the conditions of confinement at the BCJDC facility and Defendants' policies, practices, acts, and omissions complained of herein.

94.     BCJDC Defendants have used excessive force in various forms, including but not limited to: solitary confinement, restraint chairs, hitting, kicking, chokeholds and corporal punishment in violation of the Eighth Amendment.

95.     Consequently, Plaintiff's are entitled to a declaratory judgment of this Court that the BCJDC Defendants have violated the constitutional rights of the Children at BCJDC as guaranteed by the First, Eighth, and Fourteenth Amendments to the United States Constitution.

**THIRD CAUSE OF ACTION**
(Declaratory Judgment: Violation of the ADA, Rehabilitation Act, and IDEA)
(Eddie Lange, Mr. McKinney, Mr. Moore, and Mr. Clean)

96.     The preceding paragraphs are incorporated herein as if re-stated verbatim.

97.     Defendants' policies, practices, acts, and omissions complained of herein, and in particular Defendants' failure to provide adequate educational services, deprive the Children of their rights under the ADA, the Rehabilitation Act, the IDEA, regulations promulgated under these Acts, and state law.

98.     Consequently, Plaintiff's are entitled to a declaratory judgment of this Court declaring that Defendants have violated the statutory rights of the Children at BCJDC under the ADA, Rehabilitation Act, the IDEA, regulations promulgated under these Acts, and state law.

**FOURTH CAUSE OF ACTION**
(First Amendment Violation)
(Eddie Lange, Mr. McKinney, Mr. Moore, and Mr. Clean)

99.     The preceding paragraphs are incorporated herein as if re-stated verbatim.

100.    The First Amendment Free Speech Clause includes the right to correspond with others which respects the rights of the children to receive and send mail. By denying the Children the right to receive mail when it does not pose a threat, is obscene, or inappropriate infringes upon the children's first amendment rights.

101.    Consequently, Plaintiff's are entitled to a declaratory judgment of this Court declaring that Defendants have violated the statutory rights of the Children at BCJDC under the Free Speech Clause in the First Amedment.

**FIFTH CAUSE OF ACTION**
(Preliminary and Permanent Injunctive Relief; 42 U.S.C. § 1983 as to All Defendants)

102.    The preceding paragraphs are incorporated herein as if re-stated verbatim.

103.    The conditions of confinement at the BCJDC facility and Defendants' policies, practices, acts, and omissions complained of herein have deprived the Children at BCJDC of their respective rights, privileges, and immunities secured by the Constitution and laws of the United States.

104.    As a result of these deprivations, the Children at BCJDC are likely to suffer irreparable harm in the absence of injunctive relief requested below.

105.    The balance of equities favors the entry of the requested injunctive relief.

106.    The requested injunctive relief is in the public interest.

107.    Plaintiff is likely to succeed on the merits of its claims.

108.    Consequently, Plaintiff is entitled to an order by this Court preliminarily and permanently enjoining the Defendants from operating the BCJDC in such a way as to deprive the Children at BCJDC of their constitutional and statutory rights as set out more fully below in the Prayer for Relief.

### SIXTH CAUSE OF ACTION
(Attorneys' and Experts' Fees; 42 U.S.C. § 1988(b) & (c) as to All Defendants)

109.    The preceding paragraphs are incorporated herein as if re-stated verbatim.

110.    Upon prevailing on the preceding claims, Plaintiff's should be awarded their reasonable attorneys' fees, including experts' fees, as part of the costs of the action.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff's respectfully prays that this Court:

A.    Assume jurisdiction over this action;

B.    Issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, 42 U.S.C. § 1983, and Rule 57 of the Federal Rules of Civil Procedure, declaring that the

conditions of confinement at the BCJDC facility and the policies, practices, acts, and omissions complained of herein:

i. constitute punishment and subject the Children to denial of substantive and procedural due process, in violation of their constitutional rights under the Fourteenth Amendment to the United States Constitution and related sections of the Texas Constitution;

ii. are the result of Defendants' deliberate indifference to an excessive risk of harm to the Children in violation of the Eighth and Fourteenth Amendments to the United States Constitution and related sections of the Texas Constitution;

iii. deprive the Children of their property interest in receiving the minimum education required by state law in violation of the Fourteenth Amendment to the United States Constitution and related sections of the Texas Constitution;

iv. are a substantial departure from accepted professional judgment, standards, and policies, and thereby subject the Children to denial of due process of law, in violation of the Children's constitutional rights under the Eighth and Fourteenth Amendments to the United States Constitution and related sections of the Texas Constitution;

v. deprive the Children of their rights under the ADA, the Rehabilitation Act, the IDEA, and state education law;

vi. deprive the Children of their rights under Texas law governing the detention of juveniles, including Texas Codes.

C.     Issue preliminary and permanent injunctions restraining and prohibiting Defendants from confining any Children at BCJDC facilities unless and until Defendants provide all of the following:

   i.  Immediately cease and desist from the routine and unconstitutional practice of placing the Children in solitary confinement and/or lockdown as punishment.

   ii.  Immediately cease and desist from placing Children in the "wet cell" or locking Children either alone or with other Children in any room or cell which does not have natural light, an operable toilet, an operable sink, and a bed.

   iii.  Immediately cease and desist from confining Children in their cell for more than ten (10) hours per day unless the Child has been temporarily assigned to separation for safety or disciplinary reasons.

   iv.  Immediately and as a preliminary injunctive measure, cease and desist from placing residents of BCJDC in a restraint chair except by order of the BCJDC manager or designee for the sole purpose of preventing self-harm under the following circumstances:

   i.  Such an order is issued by the BCJDC manager or designee who has had no involvement in the underlying incident that gave rise to the order.

   ii.  The manager or designee conducts an examination of the resident and makes a determination that the resident poses a material threat of self harm and immediately documents that finding.

   iii.  After being placed in the restraint chair, the resident shall be monitored continuously and asked about his or her condition at frequent intervals.

   iv.  The resident shall be released from the restraint chair as soon as the resident demonstrates he or she has regained a reasonable degree of control over his or her behavior.

   v.  Under no circumstances shall the resident be confined in the restraint chair for more than 60 minutes. If, after 60 minutes the resident continues to pose a material threat of

self-harm, then an in-person examination by a psychiatrist or a LMHP under the direction of a psychiatrist will be provided and treatment will be provided pursuant to the direction of the psychiatrist or LMHP under his/her direction.

   vi. Upon release from the restraint chair, the resident shall be examined immediately by a medical provider.

   vii. The restraint chair shall never be used to punish or discipline a resident. v. On a permanent basis, cease and desist all use of the restraint chair.

   vi. Immediately cease and desist from placing Children in any other form of bodily restraint except as a security precaution during a transfer or temporary emergency. Restraints shall not be used on Children locked in a cell unless on a temporary emergency basis to prevent self-harm or harm to others. Restraints should never be used as punishment or discipline.

   vii. Allow each Child, except those temporarily placed in segregation for safety or disciplinary reasons, a minimum of one (1) hour per day of outdoor recreation and large-muscle exercise (weather permitting) in an area measuring the greater of: (a) at least fifty (50) by thirty (30) feet; (b) 750 square feet of unencumbered space with none of the dimensions less than fifteen (15) feet; (c) or fifteen (15) square feet per Child for the maximum number of Children who are expected to use the area at one time. If weather conditions do not allow for outdoor recreation or exercise, the Children shall be afforded the same amount of time for indoor recreation and exercise.

   viii. Perform medical, dental, and mental health screening of all Children, excluding intrasystem transfers, immediately upon admission to the facility with the findings recorded, including inquiry into the Child's current illnesses and health problems, mental health

issues, disabilities, prescribed medications, and any ongoing medical or mental health treatment or counseling.

   ix. Confirm any previously prescribed medical or mental health treatments and prescribed medications for each Child within twenty-four (24) hours of admission to the facility.

   x. Have each Child requiring medical or mental health treatment and/or prescribed medications evaluated and assessed by an appropriate medical professional and/or licensed mental health professional within forty-eight (48) hours of admission to the facility and at least once per week thereafter to determine any needed modifications to such treatments or medications during the Child's confinement at BCJDC.

   xi. Follow all requirements of the Americans with Disabilities Act (ADA), Section 504 of the Rehabilitation Act of 1973 (Section 504), and the Individuals with Disabilities Education Act, follow established individualized education plans (IEPs) for Children who receive special education, encourage parental participation in placement decisions, and follow procedurally required safeguards.

   xii. Establish a clearly defined disciplinary system that ensures Children understand when, why, and how they have been disciplined, affords each Child notice and an opportunity to contest the disciplinary action prior to its enforcement, and ensures that any punishment for a disciplinary violation is documented.

  D. Order Defendants to develop and implement a comprehensive plan for the correction of the unlawful policies, practices, acts, and omissions complained of herein and to submit this plan to the Court and to the attorneys for the Plaintiff for review;

  E. Appoint a monitor to oversee implementation of this injunctive relief;

F.      Retain jurisdiction over Defendants until such time as the Court is satisfied that

Defendants' unlawful policies, practices, acts and omissions complained of herein no longer

exist and will not recur;

G.      Award Plaintiff's the costs of this lawsuit and its reasonable attorneys' fees and

experts' fees; and

H.      Order such additional relief as this Court may deem just and proper.

Respectfully submitted,

By: /s/ Andy Hope Williams Jr.
 Private Attorney General
Andy Hope Williams Jr.
5707 S. Cass Ave. #681
Westmont, IL 60559
630-479-7330
hope5780@yahoo.com

By: /s/ Amy Cage
Private Attorney General
Amy Cage
2901 Ruggles Loop
Temple Texas 76501
254-535-0532
amycage71@gmail.com